STATE OF CONNECTICUT *v.* EMANUEL TUCKER
(4797)

DUPONT, C. J., BORDEN and DALY, Js.

Argued September 15—decision released November 18, 1986

*David E. Koskoff,* for the appellant (defendant).

*Timothy D. Hayes,* certified legal intern, with whom were *James G. Clark* and *Michael D. Glowa,* deputy assistant state's attorneys, for the appellee (state).

DALY, J. In this appeal from a conviction of the crime of being an accessory to assault in the second degree, in violation of General Statutes §§ 53a-60 (a) (2) and 53a-8, the defendant raises three claims of error: (1) that there was insufficient evidence to support his conviction; (2) that the court erred in refusing to charge that General Statutes § 53a-8 does not apply to an accessory after the fact; and (3) that the court erred in refusing to charge that proof of intent to employ a dangerous instrument was required under General Statutes § 53a-60 (a) (2).[1]

The jury could reasonably have found the following facts: On October 21, 1984, the victim walked to Stafford Street, Bristol, to show an apartment on that street. Upon arrival at the apartment, he saw Larry Drumwright and the defendant get out of a faded green 1969 Chevrolet and rush toward him. The complainant had previously worked with both men and recognized each of them. The defendant displayed a knife and threatened the victim, who then ran one block down Stafford Street and into and out of a pizza parlor. Drumwright ran after the victim, overtook him in front of the pizza shop, and slashed him seven times on the arms and chest with a knife or straight razor. During the fight, the Chevrolet pulled up and the driver alighted and looked in the direction of the struggle. After the slashing, Drumwright got into the car on the passenger side and was driven away from the scene. The entire episode lasted approximately ten minutes.

---

[1] The defendant was also convicted by the jury of the crime of threatening, in violation of General Statutes § 53a-62, but has not appealed from that portion of the judgment.

The defendant's first claim of error is that the evidence presented was insufficient to sustain the conviction. The standard that applies when a jury verdict is challenged for insufficiency of the evidence is firmly entrenched in Connecticut law. " ' "[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986); *State* v. *Wright,* 8 Conn. App. 399, 405, 513 A.2d 176 (1986). In addition, the evidence must be construed in the light most favorable to upholding the jury's verdict. *State* v. *Monk,* supra; see also *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). "In determining that each element of the crime charged is proved beyond a reasonable doubt, the jury may make reasonable and logical inferences but may not resort to speculation and conjecture. *State* v. *Monk,* supra, 433; *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980)." *State* v. *Wright,* supra.

" 'We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . In addition, we cannot retry the facts or judge the credibility of the witnesses.' " (Citations omitted.) *State* v. *Wright,* supra, 405–406. This court will not disturb a trier's determination of guilt if, " ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986).

In order to convict one as an accessory for aiding and abetting, the state must prove that the accused had both criminal intent and community of purpose with the principal perpetrator of the crime. General Statutes § 53a-8[2] requires (1) that the accessory have the intent to aid the principal, and (2) that, in so doing, he have the intent to commit the offense with which he is charged. See *State* v. *Vincent,* 194 Conn. 198, 479 A.2d 237 (1984); W. LaFave & A. Scott, Criminal Law (1972) § 64, p. 505 n.53. These two requirements effectively exclude from the statute's purview those whose innocent acts do in fact aid one who commits a crime; *State* v. *McCalpine,* 190 Conn. 822, 832, 463 A.2d 545 (1983); while still including those who have criminal intent and community of purpose " 'even though not present actively aiding, abetting or being guilty of a positive act in the commission of an offense.' " *State* v. *Hicks,* 169 Conn. 581, 585, 363 A.2d 1081 (1975), quoting *State* v. *Pundy,* 147 Conn. 7, 11, 156 A.2d 193 (1959).

The jury in this case could reasonably have believed that the victim recognized both the defendant, a black male, and the assailant as they exited the car. The defendant brandished a knife or straight razor and threatened to "get" the victim. The victim attempted to flee the scene, but was overtaken by the assailant, who chased him on foot. While the victim did not actually see who drove the car to the scene of the slashing, witnesses testified that it had been driven there by a black male. The assailant got into the car on the passenger side and was driven away. The jury's inference that the defendant was the driver was reasonable, particularly in light of the fact that only about ten min-

---

[2] General Statutes § 53a-8 provides: "A person, acting with the mental state required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

utes elapsed from the time the assailant and the defendant first got out of the car, to the time the assailant got back into it, to be driven away from the scene of the slashing. We are convinced from a review of the evidence that it was sufficient to support the jury's verdict.

In the first of his two requests to charge,[3] the defendant maintains that the common law crime of accessory after the fact is not covered under General Statutes § 53a-8. Thus, he asserts, since he did not actively participate in the assault, but merely drove the assailant from the scene, he did not violate General Statutes § 53a-8. The facts of this case indicate, however, much more than the common law crime of accessory after the fact. The defendant drove the assailant to the site of the first encounter with the victim where he too threatened the victim. The defendant then followed the fleeing victim in the car enabling him to drive the assailant from the scene of the actual slashing. In addition, the modern approach is to abandon the old common law terminology and to hold a person legally responsible for the actions of another when he is an accomplice of that other person in the commission of a crime. Connecticut has adopted this approach through General Statutes § 53a-8. *State* v. *Harris,* 198 Conn.

---

[3] The defendant's requests to charge were as follows:

"(1) Just because someone may be present as an inactive companion, or might do an innocent act which may in fact aid a person who commits a crime, does not make the person guilty as an accessory. To be guilty under the 'aid' statute, the person who is accused must knowingly and willfully assist the person that actually perpetrates the crime in the commission of that crime. They must both be acting with criminal intent and with a community of unlawful purpose. [*State* v. *Teart,* 170 Conn. 332, 336, 365 A.2d 1200 (1976)].

"(2) You must not convict the accused unless you are satisfied beyond a reasonable doubt that he aided Drumwright in the commission of the assault upon [the victim]. It is not sufficient for conviction that Mr. Tucker might—if you should so determine—have assisted in Drumwright's escape from the scene of the crime. (Section 53a-8.)"

158, 164–65, 502 A.2d 880 (1985); Model Penal Code (1985) § 2.06, comment 6; see also W. LaFave & A. Scott, supra, § 63, p. 501. The question to be resolved is whether the defendant aided another in the commission of a crime as defined in General Statutes § 53a-8, not whether one label or another is given to his acts. *State* v. *Harris,* supra, 166.

The state claims that both of the defendant's requests to charge concern the same principle of law, and thus violate Practice Book § 852.[4] In addition, the state claims that the second request to charge is legally incorrect. " 'When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception.' " *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986), quoting *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). Moreover, " '[t]he trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues.' " *State* v. *Harrell,* supra, 269, quoting *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978).

---

[4] Practice Book § 852 provides in pertinent part: "Requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply. . . . A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."

Even if we assume, arguendo, that the defendant's requests were proper in form, in that two requests to charge on the same principle of law were not presented to the trial court, an examination of the record reveals that the trial court complied virtually verbatim with the first request to charge. The second request, the basis of the defendant's second claim of error, is contrary to General Statutes § 53a-8, since it is not necessary to prove that an accused was actually present at or actively involved in the actual commission of a crime in order to sustain a conviction under the accessory statute. Proof that the accused intentionally assisted in its commission is sufficient. *State* v. *Haddad,* 189 Conn. 383, 400, 456 A.2d 316 (1983). Error cannot be predicated upon a court's refusal to charge in accordance to a request which is inconsistent with the law. *State* v. *Timmons,* 7 Conn. App. 457, 465, 509 A.2d 64, cert. granted, 201 Conn. 802, 513 A.2d 697 (1986); *Bernard* v. *Ribner,* 151 Conn. 670, 673, 201 A.2d 658 (1964). We conclude that the essential elements of the crime charged were correctly and adequately presented to the jury.

Finally, the defendant claims that the trial court should have charged the jury that General Statutes § 53a-60 (a) (2)[5] requires not only an intent to cause physical injury to another person but also an intent that the injury be caused by means of a dangerous instrument or a deadly weapon.

The defendant bases this argument on General Statutes § 53a-5 which provides that "[w]hen one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly

---

[5] General Statutes § 53a-60 (a) (2) provides in pertinent part: "A person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument . . . ."

appears." The defendant's interpretation of the intent requirement of General Statutes § 53a-60 (a) (2) is without merit. Our Supreme Court has upheld jury instructions wherein the jury was charged that "[t]he specific intent to harm is the basic requirement of a criminal assault." *State* v. *Truppi,* 182 Conn. 449, 461 n.9, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). Moreover, the court has stated that "[u]nlike the common law crime of assault, this statutory crime requires proof of the specific intent to achieve a serious degree of physical injury. *State* v. *Bitting,* 162 Conn. 1, 6, 291 A.2d 240 (1971)." *State* v. *Miller,* 186 Conn. 654, 664, 443 A.2d 906 (1982). While the *Miller* court examined the intent required for a conviction of first degree assault, its reasoning is applicable in our analysis of the intent required for a conviction of second degree assault. Several cases involving jury charges which limited the requisite intent to an intent to cause physical injury have been appealed to and upheld by our Supreme Court. See, e.g., *State* v. *Miller,* supra; *State* v. *Brokaw,* 183 Conn. 29, 438 A.2d 815 (1981); *State* v. *Truppi,* supra; *State* v. *Delgado,* 178 Conn. 448, 423 A.2d 106 (1979). The court has refrained from expanding the intent requirement to include the intent to cause the intended harm with a dangerous weapon. Finally, the defendant's claim of error on the issue of required intent is fatally undermined by the Supreme Court's holding in *State* v. *McCalpine,* 190 Conn. 822, 832, 463 A.2d 545 (1983), that an accessory need not "know of or endorse every act of his coparticipant in crime" in order to be guilty of the crime charged. Thus, even if the defendant did not have an intent to inflict injury with a dangerous weapon, he is liable for the acts of the principal assailant.

There is no error.

In this opinion the other judges concurred.