# STATE OF CONNECTICUT *v.* ALFREDO GONZALEZ
# (SC 18687)

Rogers, C. J., and Norcott, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued January 7—officially released April 5, 2011

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani* and *Cynthia S. Serafini*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the Appellate Court's decision in *State* v. *Miller*, 95 Conn. App. 362, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006), sets forth a correct statement of the essential elements of the offense of manslaughter in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-8[1] and 53a-55a.[2] The

[1] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[2] General Statutes § 53a-55a provides: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Manslaughter in the first degree with a firearm is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment in accordance with subdivision (5) of section 53a-35a of

defendant, Alfredo Gonzalez, appeals[3] from the judgment of the trial court, rendered after a jury trial, convicting him of, inter alia, manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a. On appeal, the defendant claims that the trial court's jury instructions improperly omitted an essential element of the offense of manslaughter in the first degree with a firearm as an accessory, namely, the defendant's intention that the principal would use, carry or threaten the use of a firearm during the commission of the offense. We conclude that the trial court's jury instructions, which conformed to the Appellate Court's decision in *Miller*, were a proper statement of the essential elements of manslaughter in the first degree with a firearm as an accessory. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts, which the jury reasonably could have found, and procedural history. The defendant had engaged in an ongoing feud with the victim, Samuel Tirado.[4] On the evening of May 5, 2006, the defendant and three friends, Anthony Furs, Christian Rodriguez and Melvin Laguna, went out for the evening in Rodriguez' red GMC Yukon. They stopped briefly at one bar, and then decided to go to

which five years of the sentence imposed may not be suspended or reduced by the court."

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The victim was the best friend of Michael Borelli, who was convicted of manslaughter charges after he fatally stabbed Jose Gonzalez, the defendant's brother, during a melee at a Waterbury gas station. At one of the court hearings in that case, the victim chanted, "free Mike Borelli, fuck Peach," in reference to the defendant, whose nickname is "Peachy." Thereafter, the defendant often stated that he blamed the victim for his brother's death and wanted revenge. The victim further antagonized the defendant one night in April, 2006, at Bobby Allen's, when the victim snubbed the defendant's offer to shake his hand. The defendant then told the victim that he and his friends were "going down."

a bar named Bobby Allen's in Waterbury because they knew that the victim went there frequently, and they wanted to start a fight with him. En route to Bobby Allen's, the defendant observed that there were two guns in the Yukon, in addition to a razor blade that he intended to use in that fight, and remarked that, if he had the money, he would give it to Furs to "clap," or shoot, the victim. Rodriguez, who also disliked the victim, then offered to pay Furs $1000 to shoot the victim, which Furs accepted.

When they arrived at Bobby Allen's, the defendant left the group briefly to urinate behind a nearby funeral home. When he rejoined the group, Furs gave the defendant the keys to the Yukon and told him to go get the truck because the victim was nearby speaking with Rodriguez. The defendant and Furs then drove a short distance toward Bobby Allen's in the Yukon, and Furs, upon spotting the victim and Rodriguez outside the bar, jumped out of the Yukon and shot the victim in the chest with a black handgun, mortally wounding him. Rodriguez and Laguna then fled the scene on foot, while Furs and the defendant drove off in the Yukon to a friend's nearby apartment on South Main Street. Thereafter, with the assistance of friends, Furs[5] and the defendant fled separately from the apartment, and the

---

[5] Prior to trial in this case, Furs pleaded guilty to murder and was sentenced to forty-seven years imprisonment. See *Furs* v. *Superior Court*, 298 Conn. 404, 407, 3 A.3d 912 (2010). As is detailed in the record of the trial in the present case, as well as our opinion in *Furs*, although the state subpoenaed Furs to testify at the defendant's trial, he refused to testify on the ground that to do so would violate his privilege against self-incrimination given a pending habeas corpus proceeding in his case, notwithstanding the state's offer of use immunity. Id., 407–409. The trial court held Furs in summary criminal contempt and sentenced him to six months imprisonment consecutive to his murder sentence as a consequence of his failure to testify, concluding that the prosecutor's offer of use immunity was sufficient to protect Furs' fifth amendment rights. Id., 409–10. We subsequently granted Furs' writ of error from that contempt finding, concluding that he was entitled to full transactional immunity under General Statutes § 54-47a. Id., 406, 411–12.

defendant subsequently disposed of the gun, first by hiding it in a woodpile at his mother's home, and later by throwing it into Pritchard's Pond (pond) in Waterbury.

Thereafter, Waterbury police officers investigating the shooting questioned the defendant after arresting him on an outstanding motor vehicle warrant on May 6, 2006. The defendant initially gave a statement denying any involvement in the incident. Subsequently, on May 15, 2006, the Waterbury police reinterviewed the defendant, at which time he admitted disposing of the gun by throwing it into the pond. The defendant then accompanied the officers to the pond and showed them where he had thrown the gun, which enabled a dive team to recover it several days later.[6] After they returned to the police station, the defendant gave the police a second statement admitting that he had lied in his initial statement and explaining his role in the events leading to and following the shooting.

The state charged the defendant in a six count substitute information with murder as an accessory in violation of § 53a-8 and General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a, conspiracy to commit assault in the first degree in violation of § 53a-48 and General Statutes § 53a-59 (a) (5), hindering prosecution in the second degree in violation of General Statutes § 53a-166, and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The defendant elected a jury trial.[7] After evidence, the trial court denied

---

[6] Investigators subsequently determined that this gun had fired the bullet that was recovered from the victim's chest and had ejected a shell casing that was found at the scene.

[7] Prior to trial in this case, the defendant moved to suppress both statements on the ground that they had been obtained in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After an evidentiary hearing, the trial court denied the defendant's motion to suppress. We note that the defendant does not challenge the trial

the defendant's motion for acquittal. The jury returned a verdict finding him not guilty of accessory to murder and conspiracy to commit murder, but guilty on all other counts. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of thirty-eight years imprisonment, with ten years of special parole. This appeal followed.

On appeal, the defendant claims that the trial court improperly instructed the jury regarding the elements of the offense of manslaughter in the first degree with a firearm as an accessory. Specifically, the defendant claims that accessorial liability under § 53a-8 encompasses both the specific intent to cause a result, in this case, to cause the victim "serious physical injury," as well as the general intent to perform the physical acts that constitute the offense of manslaughter in the first degree with a firearm, including the use, carrying or threatened use of a firearm. The defendant contends that accessorial liability cannot attach unless both the accessory and the principal commit each and every element of the offense, and that relieving the state of the burden of proving that the accessory intended the use of a firearm blurs the distinction between liability as a coconspirator under the *Pinkerton* theory of vicarious liability,[8] and accessorial liability under § 53a-8. Thus, the defendant argues that we should overrule *State* v. *Miller*, supra, 95 Conn. App. 362, which concluded that the state need not prove that the defendant intended the principal's use, carrying or threatened use of a firearm as an essential element of accessorial liability for manslaughter in the first degree with a firearm.

In response, the state contends that the firearm requirement of § 53a-55a is an "aggravating circum-

court's ruling on the motion to suppress in this appeal.

[8] See *United States* v. *Pinkerton*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946); see also *State* v. *Walton*, 227 Conn. 32, 45–46, 630 A.2d 990 (1993) (seminal case adopting *Pinkerton* doctrine as matter of state law).

stance" that does not require proof of any particular mental state for either the principal or the accessory. The state notes that the harshness of the strict liability aspect of this aggravating circumstance is mitigated by General Statutes § 53a-16b,[9] which is an affirmative defense, whereby the defendant may prove that he was not armed with a firearm and had no reasonable ground to believe that any other participant in the crime was so armed. The state further emphasizes that this affirmative defense does not relieve it from first having to prove all of the elements of the offense, which also means that the distinction between accessorial and coconspirator liability remains intact. Accordingly, the state contends that *State* v. *Miller*, supra, 95 Conn. App. 362, was properly decided and remains controlling precedent.[10] We agree with the state and conclude that, to establish accessorial liability under § 53a-8 for manslaughter in the first degree with a firearm in violation of § 53a-55a, the state must prove that the defendant, acting with the intent to cause serious physical injury to another person, intentionally aided a principal offender in causing the death of such person or of a third person, and that the principal, in committing the act, used, carried or threatened to use a firearm.

The record reveals the following additional relevant facts and procedural history. After explaining the principles of accessorial liability generally in the context of

[9] General Statutes § 53a-16b provides: "In any prosecution for an offense under section 53a-55a, 53a-56a, 53a-60a, 53a-92a, 53a-94a, 53a-102a or 53a-103a in which the defendant was not the only participant, it shall be an affirmative defense that the defendant: (1) Was not armed with a pistol, revolver, machine gun, shotgun, rifle or other firearm, and (2) had no reasonable ground to believe that any other participant was armed with such a weapon."

[10] The state also contends that any impropriety in the jury instructions was harmless error under the facts of this case because there was "overwhelming evidence" that the defendant intended a firearm be used in the attack on the victim. As a result of our conclusion on the statutory issue, we need not address the parties' harmless error claims.

the murder charge, the trial court instructed the jury in relevant part that, "[u]nder the accessorial theory of liability, as I've defined it, in order for the state to prove the offense of accessory to manslaughter in the first degree with a firearm, the following elements each must be proved beyond a reasonable doubt: Number one, that the defendant . . . had the specific intent to cause serious physical injury to [the victim]. Two: That the defendant solicits, requests or intentionally aids the principal, the shooter, who causes the death of such person, [the victim]. And three: In the commission of such offense the principal, the shooter, uses a firearm." After explaining each of the three elements individually, including that the jury had to find that the defendant "had the specific intent to cause serious physical injury to [the victim]," and that "the state must prove beyond a reasonable doubt . . . that the defendant did solicit, request or intentionally aid another person, the principal, to engage in conduct which constitutes [the] crime of manslaughter in the first degree," the trial court noted that the "third element is that the state must prove beyond a reasonable doubt that in the commission of this offense the principal, [Furs], uses a firearm," defined as "any pistol, revolver or other weapon, whether loaded or unloaded, from which a shot may be discharged. You must find that the firearm was operable at the time of the offense."[11]

[11] The trial court's complete instructions for the charge of manslaughter in the first degree with a firearm as an accessory provides as follows: "Count three is now also an accessory. The charge is accessory to manslaughter in the first degree. Although in this count we are again dealing with the claim of the defendant's liability relevant to accessorial liability, I am first going to define for you the substantive crime of manslaughter in the first degree with a firearm.

"In order to find a defendant guilty of the substantive crime, not accessory, of the substantive crime of manslaughter in the first degree with a firearm, the state must prove the following elements beyond a reasonable doubt: That the defendant, one, with intent to cause serious physical injury to another person, did cause the death of such person, and in the commission—two, did cause the death of such person, and three, in the commission of such offense he uses a firearm. That's the substantive elements of the crime of manslaughter in the first degree with a firearm.

The defendant subsequently took an exception to this portion of the charge, seeking reinstruction on this point. The trial court denied that request, rejecting the defendant's argument that "the accessory must have

"As I have indicated, the defendant here in this third count is charged with accessory. Please refer to the definition—to the instruction on accessory that I gave you under count one, it applies here equally.

"Under the accessorial theory of liability, as I've defined it, in order for the state to prove the offense of accessory to manslaughter in the first degree with a firearm, the following elements each must be proved beyond a reasonable doubt: Number one, that the defendant . . . had the specific intent to cause serious physical injury to [the victim]. Two: That the defendant solicits, requests or intentionally aids the principal, the shooter, who causes the death of such person, [the victim]. And three: In the commission of such offense the principal, the shooter, uses a firearm.

"For you to find the defendant guilty of this charge under accessorial liability the state must prove the following elements beyond a reasonable doubt: First, the state must prove beyond a reasonable doubt that the defendant had the specific intent to cause serious physical injury to [the victim]. The term 'serious physical injury' means a physical injury that creates a substantial risk of death or that causes serious disfigurement, serious impairment of health or serious loss [or] impairment of the function of any bodily organ.

"You will note that the basis of the charge under this statute is not that the defendant had the intent to cause the death or kill [the victim], but that he intended to inflict serious physical injury.

"You are instructed to use the definition of intent and specific intent the court provided earlier in these instructions.

"The second element that the state must prove beyond a reasonable doubt is that the defendant did solicit, request or intentionally aid another person, the principal, to engage in conduct which constitutes [the] crime of manslaughter in the first degree as I've defined that.

"The third element is that the state must prove beyond a reasonable doubt that in the commission of this offense the principal, [Furs], uses a firearm.

"The term 'firearm' includes any pistol, revolver or other weapon, whether loaded or unloaded, from which a shot may be discharged. You must find that the firearm was operable at the time of the offense.

"In summary, the essential elements of the crime of accessory to manslaughter in the first degree with a firearm, each must be proven by the state beyond a reasonable doubt are, one, that the defendant had the specific intent to cause serious physical injury to another person, namely [the victim], that the defendant did solicit, request or intentionally aid the principal to engage in the conduct that constituted the elements of the offense, and three, that in the commission of this offense the principal did use a firearm.

"If you find that the state has proven beyond a reasonable doubt each of the elements of the crime of accessory to manslaughter in the first degree with a firearm, then you should find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you shall then find him not guilty."

the intention that a firearm be used, not only the principal have the intent to use a firearm and use a firearm, but that the accessory must have the intention." That court agreed with the state's position that the firearm element was an "aggravant" and that the only mental state that the state was required to prove under §§ 53a-8 and 53a-55a was "intent to cause serious physical injury."

We begin by noting that the defendant, by taking an exception, properly preserved this issue for appellate review. See, e.g., *State* v. *Osimanti*, 299 Conn. 1, 26, 6 A.3d 790 (2010). Additionally, we review jury instructions to determine whether, read in their entirety, they omitted an essential element of the crime charged, thus creating a "reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Griggs*, 288 Conn. 116, 125, 951 A.2d 531 (2008). Finally, the defendant's claim, which requires us to determine whether a particular mental state is an essential element of manslaughter in the first degree with a firearm as an accessory, raises a question of statutory interpretation, over which we exercise plenary review in applying General Statutes § 1-2z. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 13–14, 981 A.2d 427 (2009).

"The statutory provision governing accessorial liability is . . . § 53a-8 (a), which provides: A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. This court previously has stated that a conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to

commit the offense with which he is charged. . . . Additionally, one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Citation omitted; internal quotation marks omitted.) *State* v. *Heinemann*, 282 Conn. 281, 313, 920 A.2d 278 (2007). Under § 53a-8, "accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . ." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 439, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

We now turn to *State* v. *Miller*, supra, 95 Conn. App. 362, the otherwise controlling decision that the defendant asks us to overrule. In *Miller*, the defendant had claimed that the evidence was insufficient to prove that he had violated § 53a-55a under a theory of accessorial liability because "the evidence was insufficient to establish that he intended the use of a firearm." Id., 371. Relying primarily on our decisions in *State* v. *Avila*, 223 Conn. 595, 613 A.2d 731 (1992), *State* v. *Crosswell*, 223 Conn. 243, 612 A.2d 1174 (1992), and *State* v. *McCalpine*, 190 Conn. 822, 463 A.2d 545 (1983), the Appellate Court rejected the defendant's claim that the state was required to prove that he had intended the use of a firearm in the commission of the crime, concluding that the use of a firearm was an "aggravating circumstance [that] does not require proof of any particular mental state." *State* v. *Miller*, supra, 375. Articulating the elements of § 53a-55a as an accessory, the court further concluded that, "there is a dual intent required for commission of the crime of manslaughter in the first degree with a firearm as an accessory, namely, that the defendant intended to inflict serious physical injury and that he intended to aid the principal in doing so." Id., 377. The court then provided an explanation with respect to the intent element of manslaughter in the first degree

with a firearm: "When a defendant is charged with a violation of § 53a-55a (a) on the ground that 'he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm' . . . the state need not prove that the defendant intended the use, carrying or threatened use of the firearm." (Citation omitted.) Id.

To determine the correctness of *Miller*, we start with a review of the elements of the underlying substantive crime, namely, manslaughter in the first degree with a firearm in violation of § 53a-55a, which provides in relevant part: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55,[12] and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ." See also footnote 2 of this opinion. The statutory language of § 53a-55a does not attach a particular mental state to the element requiring that, "in the commission of such offense [the perpetrator] uses, or is armed with and threatens the use of or displays or

[12] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm." Lacking a specifically enumerated mental state, the statutory language of § 53a-55a clearly indicates, then, that the firearm element is one of general intent, requiring only that the perpetrator act volitionally in some way to use, possess or threaten to use a firearm in the commission of the offense.[13] Put differently, § 53a-55a, like any other crime of "affirmative action . . . require[s] something in the way of a mental element—at least an intention to make the bodily movement which constitutes the act which the crime requires. . . . Such an intent, to perform certain acts proscribed by a statute, we have referred to as the general intent ordinarily required for crimes of commission rather than omission."[14] (Citations omitted; internal quotation marks omitted.) *State* v. *Pierson*, 201 Conn. 211, 216, 514 A.2d 724 (1986), on appeal after remand,

[13] We therefore disagree with the state's characterization of the firearm element as one of strict liability. See, e.g., *State* v. *Sorabella*, 277 Conn. 155, 170–71, 891 A.2d 897 ("[T]he offense of sexual assault in the second degree is not a strict liability crime; rather, it is a general intent crime. . . . The fact that the state is not required to establish that the accused knew that his victim was under sixteen years of age does not transform the offense into a strict liability offense because the state still must establish that the accused had the general intent to have sexual intercourse with the victim." [Citations omitted.]), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

[14] "That the [perpetrator] intend[s] to perform the physical acts that constitute the crime . . . in the manner proved by the evidence [is] implicitly a part of the state's burden of proof and, in that sense, an element of the crime." *State* v. *Pierson*, 201 Conn. 211, 216–17, 514 A.2d 724 (1986), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989); see also, e.g., *State* v. *Washington*, 15 Conn. App. 704, 710–11, 546 A.2d 911 (1988) (assault in first degree in violation of General Statutes § 53a-59 [a] [1] requires only intent to cause serious injury, not intent to cause that injury by means of deadly weapon or dangerous instrument). A trial court is not, however, required to instruct a jury about the principle that "a criminal act must be volitional" or that the defendant must have the "general intent to do a criminal act" unless there is evidence at trial that suggests that "the defendant's conduct was involuntary . . . ." *State* v. *Pierson*, supra, 217–18.

208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989). Thus, in a prosecution for manslaughter in the first degree with a firearm under § 53a-55a, the state must prove only that the perpetrator acted volitionally to use, possess or threaten to use a firearm in the commission of the offense, with no obligation to prove any mental state beyond that required by the underlying manslaughter statute.

Ambiguity emerges, however, as we determine the additional elements of accessorial liability under § 53a-8 for violations of § 53a-55a.[15] Thus, we turn to the seminal case in this area, *State* v. *McCalpine*, supra, 190 Conn. 822, wherein this court rejected the defendants' claim that the trial court had improperly failed to instruct the jury that, to hold them liable as accessories

---

[15] We note that the legislative history establishes that, in enacting § 53a-55a, the legislature did not intend to change the underlying crime of first degree manslaughter beyond adding a simple requirement that a firearm be used, carried or threatened in the commission of the offense. The legislature enacted § 53a-55a as part of Public Acts 1975, No. 75-380 (P.A. 75-380), nominally as a "new crime," but essentially as a sentence enhancement. See *State* v. *Jenkins*, 198 Conn. 671, 676, 504 A.2d 1053 (1986); see also id., 678–79 ("Although the legislature might have enacted a penalty-enhancing statute, the language of [General Statutes] § 53a-92a unequivocally demonstrates that it did not do so. In . . . § 53a-92a (a), the statute expressly speaks of kidnapping in the first degree and kidnapping in the first degree with a firearm as separate offenses."). The legislature enacted P.A. 75-380 as a response to a rise in violent crimes against individuals involving deadly weapons; it originally provided for a one year mandatory minimum sentence. See 18 S. Proc., Pt. 5, 1975 Sess., pp. 2293–97, remarks of Senators Stanley H. Page, Howard T. Owens, Jr., and George L. Gunther; 18 H.R. Proc., Pt. 10, 1975 Sess., pp. 4858–59, remarks of Representative Paul C. DeMennato. Speaking in support of the bill, Senator David M. Barry stated that "each one of these new crimes which add the words with a firearm to it has to be tied into the existing criminal statutes that are similar except do not involve a firearm. . . . [W]hat the purpose of this [b]ill is to require a mandatory sentence that may not be suspended or reduced by the [c]ourt." 18 S. Proc., supra, p. 2292; see also id., p. 2294 (noting that it was unnecessary to address violent crimes already subject to mandatory sentences, including assault in first degree or robbery in first or second degree).

to first degree robbery pursuant to § 53a-8 and General Statutes § 53a-134 (a) (2),[16] the defendants "had to possess the requisite intent for robbery, the intent to aid a robbery and the intent that a deadly weapon be possessed." Id., 831. The court noted that, "[t]o establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another, the state must prove criminality of intent and community of unlawful purpose," and "[t]he mental state of an aider and abettor incorporated in § 53a-8 does not require that the accused know of or endorse every act of his coparticipant in crime." Id., 832. Thus, the court concluded that there is "no requirement that the accessory possess the intent to commit the specific degree of the robbery charged or the intent to possess a deadly weapon."[17]

[16] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[17] Concurring in the result in McCalpine, Justice Shea disagreed with the majority's accessorial liability analysis; he concluded that its determination that "an accomplice need not endorse every act of his coparticipant in crime or possess the intent to commit the specific degree of the robbery charged or the intent to possess a deadly weapon . . . appears to water down [the] principles" of accessory liability requiring the accessory to "have the intent to aid the principal and that in so aiding he intends to commit the offense with which he is charged." (Internal quotation marks omitted.) State v. McCalpine, supra, 190 Conn. 834 (Shea, J., concurring). Justice Shea stated that "[t]he fact that no specific intent is made an element of the crimes for which the defendants were convicted, robbery in the first degree in violation of . . . § 53a-134 (a) (2) and kidnapping in the second degree in violation of General Statutes § 53a-94, does not remove the necessity for proof of a general intent to perform the acts which constitute the offense. . . . Unless it was the 'conscious objective' of each defendant that he or another participant perform all of the acts necessary to constitute the particular crime, he would not be guilty of it. This requirement must extend to those acts which

Id., 833. Indeed, *McCalpine* remains good law with respect to the proposition that the "accessory statute's requirement that the defendant act 'with the mental state required for commission of an offense' drops out of the calculation when the aggravating circumstance does not require proof of any particular mental state."[18]

enhance the degree of the crime as well as to those which constitute the basic crime itself. Otherwise an accomplice might be convicted of an offense although he did not entertain the same mental state required by statute for conviction of the principal." (Citations omitted.) Id.

[18] We note, however, that subsequent decisions have limited *McCalpine* in cases wherein the underlying statutory circumstances require proof of a particular mental state. Specifically, in *Crosswell*, the defendant was convicted as an accessory to burglary in the first degree in violation of General Statutes § 53a-101 (a), the elements of which are that "the state was required to prove that the defendant 'enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense . . . intentionally, knowingly or recklessly inflict[ed] or attempt[ed] to inflict bodily injury on anyone.' " *State* v. *Crosswell*, supra, 223 Conn. 257. The defendant claimed, inter alia, "that his conviction for accessory to burglary in the first degree also required proof of at least recklessness on his part with respect to [the principal's] infliction of bodily injury on the occupants of the apartment," and that there was no evidence of his awareness of "any risk, much less a substantial one, that [the gun] would be used to hit [the victim]." (Internal quotation marks omitted.) Id. Noting that the "gist of the defendant's argument is that the charge of being an accessory to burglary in the first degree requires proof of the same mental state as is required to prove a charge of burglary in the first degree"; id., 258; the court criticized the statements in *State* v. *McCalpine*, supra, 190 Conn. 832, that § 53a-8 permits "an accomplice to be found guilty even though he did not 'know of or endorse every act of his co-participant[s] in crime' " and that "the accessory was not required to 'possess the intent to commit the specific degree' of the crime charged." *State* v. *Crosswell*, supra, 258. The court considered these statements in *McCalpine* to be dicta because "[i]ntent was not an element of the aggravating circumstance provided by the criminal statute at issue in" that case, namely, being armed with a deadly weapon. Id., 258 and n.11. Moreover, the court concluded that the dictum in *McCalpine* to the effect that "an accessory need not be proved to possess the intent to commit the specific degree of the crime charged"; id., 259; was not supported directly by the cited authority, *State* v. *Parham*, 174 Conn. 500, 506–509, 391 A.2d 148 (1978), and, indeed, was inconsistent with the court's subsequent decision in *State* v. *Foster*, 202 Conn. 520, 522 A.2d 277 (1987). See *State* v. *Crosswell*, supra, 258–60.

In *Crosswell*, the court also observed that, in *State* v. *Foster*, supra, 202 Conn. 532–33, "without expressly overruling our statements in *McCalpine*

*State* v. *Crosswell*, supra, 223 Conn. 258 n.11; see id., 256 (accessory to first degree burglary); see also id., 261 n.14 (noting that this point "has not been questioned in any decision by this court").

Connecticut case law remains consistent with *McCalpine* in permitting the imposition of accessorial liability pursuant to § 53a-8, without requiring that the defendant intend to satisfy a criminal statute's aggravating circumstance in cases wherein that aggravating circumstance does not have a specific mental state and requires only that the principal act with the general intent to perform the proscribed act.[19] Most significant

or *Parham*, we held that accessorial liability is predicated upon the actor's state of mind at the time of his actions, and whether that state of mind is commensurate to the state of mind required for the commission of the offense. . . . Emphasizing that accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . we concluded that a person may be held liable as an accessory . . . if he has the requisite culpable mental state for the commission of the substantive offense . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crosswell*, supra, 223 Conn. 260. The court further posited that, in *Foster*, "in effect we agreed with the position taken by Justice Shea, in his concurring opinion in *State* v. *McCalpine*, supra [190 Conn. 833–34]." *State* v. *Crosswell*, supra, 261; see also footnote 17 of this opinion. Given the factual posture of *Crosswell*, as well as the fact that the trial court's instructions in that case did not adopt the suspect language from *McCalpine*, this court ultimately did not, however, seek to reconcile the ostensibly conflicting language from *McCalpine* and *Foster*. See *State* v. *Crosswell*, supra, 223 Conn. 261–62; see also D. Borden & L. Orland, 10 Connecticut Practice Series: Connecticut Criminal Law (2d Ed. 2007) § 53a-8, p. 20 (whether § 53a-8 "requires that the accessory have the mental state to commit the specific degree of the crime charged" remains "unanswered question").

[19] For purposes of distinguishing *McCalpine*, the defendant argues, however, that accessorial liability for a violation of § 53a-55a is distinct from that for a violation of § 53a-134 (a) (2), and thus requires proof of the accessory's intent that a firearm be used, because the robbery statute specifically encompasses the circumstance that a participant in the robbery be "armed with a deadly weapon"; General Statutes § 53a-134 (a) (2); while the manslaughter statute requires affirmative action, namely, that the perpetrator "in the commission of such offense . . . uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm."

is *State* v. *Davis*, 255 Conn. 782, 787, 772 A.2d 559 (2001), wherein we concluded that an unarmed accomplice may be subjected to the five year sentence enhancement pursuant to General Statutes § 53-202k, which applies to "[a]ny person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . ." We concluded that "[t]he fact that § 53-202k is a sentence enhancement provision rather than a separate and distinct offense . . . is of no consequence to our analysis. The accomplice liability statute permits an accessory to be 'prosecuted and punished as if he were the principal offender.' . . . Thus, once convicted of armed robbery and armed burglary, even if as an accessory, the defendant is legally indistinguishable from the principal actor. Accordingly, the defendant is subject to the enhancement penalty that the principal also would have received had he been caught and convicted. For purposes of legal analysis, it is irrelevant that the defendant did not actually possess the gun." (Citations omitted.) *State* v. *Davis*, supra, 792; see also *State* v. *Higgins*, 265 Conn. 35, 47–48, 826 A.2d 1126 (2003) (under capital felony statute, General Statutes § 53a-54b [8], accessory need not be aware of victim's age while acting with intent requisite for

General Statutes § 53a-55a (a). We disagree. For purposes of the general intent attendant to the firearm element, this distinction is one without a difference because both statutes require a physical act by the perpetrator— in the case of the robbery statute, arming himself with a deadly weapon— without an attendant mental state. Put differently, as between the armed robbery and manslaughter statutes, the perpetrator or principal's volitional conduct with respect to the possession or use of a firearm or deadly weapon is a difference in degree, rather than kind. See *State* v. *Lester*, 123 Ohio St. 3d 396, 401, 916 N.E.2d 1038 (2009) ("[t]he statute's amendment . . . to add language requiring a defendant to brandish or display a deadly weapon in addition to the strict-liability requirement of possession and control of the deadly weapon does not establish that the General Assembly intended to require a specific mental element").

murder); *State* v. *Tucker*, 9 Conn. App. 161, 168, 517 A.2d 640 (1986) (accessory to assault in second degree under General Statutes § 53a-60 [a] [2] need intend only to aid in causing physical injury, not that such injury be caused by dangerous instrument or deadly weapon); cf. *State* v. *Peeler*, supra, 271 Conn. 437–38 (aggravating factors under General Statutes § 53a-46a [i] arising from manner in which capital felony was committed by principal may be imputed to defendant as accomplice pursuant to § 53a-8).

Moreover, as the state aptly observes, the defendant's claim is inconsistent with the affirmative defense provided by § 53a-16b, which provides in relevant part that "[i]n any prosecution for an offense under section 53a-55a . . . in which the defendant was not the only participant, it shall be an affirmative defense that the defendant: (1) Was not armed with a pistol, revolver, machine gun, shotgun, rifle or other firearm, and (2) had no reasonable ground to believe that any other participant was armed with such a weapon." Section 53a-16b is consistent with other areas wherein the legislature has provided that the state must prove the essential elements of the crime, and has left it to the defendant to mitigate his criminal culpability or sentencing exposure via an affirmative defense, particularly with respect to areas that uniquely are within the defendant's knowledge. See *State* v. *Ray*, 290 Conn. 602, 623–24, 966 A.2d 148 (2009) (General Statutes § 21a-278 [b] constitutionally may require defendant to prove drug dependency as affirmative defense to sale of narcotics); *State* v. *Andresen*, 256 Conn. 313, 333–34, 773 A.2d 328 (2001) (under General Statutes § 36b-16, state need only prove that defendant sold unregistered securities because exemption from registration requirements is affirmative defense that defendant must prove). Indeed, requiring the state to prove, in a prosecution seeking to hold a

defendant accessorily liable for a violation of § 53a-55a, that the defendant intended the use of a firearm by the principal, would render § 53a-16b surplusage, "which would violate the basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 849, 937 A.2d 39 (2008). Thus, we conclude that the trial court properly declined to instruct the jury that, to convict the defendant of manslaughter in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-55a, the defendant was required to intend that Furs would use, carry or threaten to use a firearm in the commission of the act.[20]

Thus, we conclude that, in *State* v. *Miller*, supra, 95 Conn. App. 362, the Appellate Court properly articulated the elements of accessorial liability under § 53a-8 for manslaughter in the first degree with a firearm

---

[20] We also disagree with the defendant's contention that permitting accessories to be held liable for manslaughter in the first degree with a firearm under § 53a-55a in the absence of a showing of intent to engage in the physical acts constituting the offense, namely, the perpetrator's use, carrying or threat to use a firearm, is inconsistent with *State* v. *Pierson*, supra, 201 Conn. 216, wherein this court concluded that "[t]o some extent . . . all crimes of affirmative action require something in the way of a mental element—at least an intention to make the bodily movement which constitutes the act which the crime requires. . . . Such an intent, to perform certain acts proscribed by a statute, we have referred to as the general intent ordinarily required for crimes of commission rather than omission." (Citation omitted; internal quotation marks omitted.) The defendant's argument, requiring that the state prove in essence an extra element of general intent, namely, that the accessory intended that the principal use, carry or threaten to use a firearm in the commission of the offense, is, however, undercut by our statement in *Pierson* that "[o]ur acknowledgement of the fundamental principle that a criminal act must be volitional does not mean that a charge to a jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary . . . ." Id., 217; see also id., 218 ("[t]he defense of the absence of a general intent to do a criminal act may be treated similarly").

in violation of § 53a-55a, and decline the defendant's invitation to overrule that decision.[21] Accordingly, we adopt the conclusion in *Miller* that "there is a dual intent required for commission of the crime of manslaughter in the first degree with a firearm as an accessory, namely, that the defendant intended to inflict serious physical injury and that he intended to aid the principal in doing so." Id., 377. When a defendant is charged with a violation of § 53a-55a as an accessory, "the state need not prove that the defendant intended the use, carrying or threatened use of the firearm." Id. Proof of the intent element is satisfied if the principal in fact used the firearm. The trial court, therefore, properly instructed the jury in this case.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[21] We further disagree. with the defendant's claim that not requiring the state to prove that the defendant, as an accessory, intended the use, carrying or threat of a firearm in the commission of the offense, blurs the distinction between accessorial liability under § 53a-8 and coconspirator liability under the *Pinkerton* doctrine. "[A]ccessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . . Consequently, to establish a person's culpability as an accessory to a particular offense, the state must prove that the accessory, like the principal, had committed each and every element of the offense. . . . By contrast, under the *Pinkerton* doctrine, a conspirator may be found guilty of a crime that he or she did not commit if the state can establish that a coconspirator did commit the crime and that the crime was within the scope of the conspiracy, in furtherance of the conspiracy, and a reasonably foreseeable consequence of the conspiracy." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 483, 886 A.2d 777 (2005); see id. (rejecting state's reliance on *State* v. *Davis*, supra, 255 Conn. 795–96, in support of claim that firearms sentence enhancement under § 53-202k should be applied to unarmed coconspirators under *Pinkerton* doctrine). Our conclusion does not blur the distinction between these two forms of criminal liability. The state still must prove that the defendant committed or helped to commit all elements of the underlying substantive crime for liability to attach under § 53a-8; in contrast, under the *Pinkerton* doctrine, the state is relieved of that burden, but instead must prove the existence and scope of a criminal conspiracy in order for liability to attach.