******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KEEMO WHITE
## (AC 44242)

Bright, C. J., and Cradle and Seeley, Js.

*Syllabus*

Convicted of the crime of assault in the first degree with a firearm as an accessory, the defendant appealed to this court. He claimed, inter alia, that the trial court's jury instructions improperly omitted an essential element of that offense, namely, the accessory's intent that the principal would use a firearm during the commission of the offense. The defendant had been dating A's sister, M. A suspected that the defendant had been beating M and drove with S to M's apartment building to check on her. The victim, G, drove to the apartment building separately and joined A and S inside the building. When the defendant arrived shortly thereafter, a physical altercation ensued between A and the defendant during which a gun fell out of the defendant's pocket. G, S and A then fled the building and entered G's car while the defendant ran to a parking lot across the street and conferred with another man. The defendant and the other man, who was armed with a gun, then ran to G's car, which G was unable to start, and, together, pulled on the handle of the driver's side door in an attempt to open the door and pull G out of the driver's seat. G attempted to flee when they were able to open the door but was shot by the defendant's acquaintance. At trial, the defendant contended that the court should instruct the jury on accessorial liability in accordance with the requirements for conspiratorial liability set forth in *State* v. *Pond* (315 Conn. 451), which held that a defendant must intend that every element of the planned offense be accomplished, even an element that itself carries no specific intent requirement. The trial court rejected the defendant's reliance on *Pond* and instead instructed the jury in accordance with *State* v. *Gonzalez* (300 Conn. 490) and *State* v. *Artis* (136 Conn. App. 568) that an accomplice may be held criminally liable for the principal's use of a weapon even when the accessory did not intend or even know that a weapon would be used to commit the crime. *Held*:

1. The defendant could not prevail on his claim that the evidence was insufficient to support his conviction, which was based on his assertion that his actions did not show that he intended to physically harm G or intended that his accomplice would use a firearm: the jury reasonably could have inferred that the defendant intended to cause physical injury, as he enlisted his acquaintance's aid to pursue G, A and S after the initial altercation with A ended, the defendant knew that his acquaintance had a gun while the two men forcibly tried to open the car door as G pleaded with them not to shoot, and the jury reasonably could have credited the testimony of G and A that, while inside G's car, they saw the defendant's acquaintance with a gun in his hand and the defendant pulling on the car door's handle, which was corroborated by video from a nearby surveillance camera, in an attempt to engage in a physical altercation with G; moreover, the state was not required to prove, as the defendant claimed, that he intended that his acquaintance use a firearm or that he knew his acquaintance had a firearm, as neither of those factors were elements of the offense with which the defendant was charged; furthermore, despite the defendant's contentions that it was speculative for the jury to conclude that he intended to harm G and that the jury reasonably could have drawn alternative inferences from the evidence, the fact that the jury might have reached one of the different conclusions the defendant proffered did not undermine the reasonableness of the conclusion that it did reach.

2. The defendant's claim that the trial court improperly declined to instruct the jury that he had to intend, or to know, that his acquaintance would discharge a firearm, was unavailing, as those criteria were not elements of accessorial liability under § 53a-59 (a) (5):

    a. Contrary to the defendant's assertion, a plain reading of § 53a-59 (a) (5) makes clear that it includes neither a specific intent nor a general intent requirement as to the discharge of a firearm, which is merely the

means by which the injury must occur, and the defendant's claim that an accomplice should at least have knowledge of the firearm, as required under federal law, was unavailing, as this state's Supreme Court, having addressed a similar issue in *Gonzalez*, is the ultimate authority on the interpretation of Connecticut statutory law; moreover, there was no merit to the defendant's contention that, because he was unable to avail himself of the statutory (§ 53a-16b) affirmative defense regarding his knowledge that his accomplice had a firearm, § 53a-59 (a) (5) must include an intent or knowledge element with regard to the use of a firearm, as the legislature's exclusion of that crime from the list of crimes in § 53a-16b evinced its intent that lack of intent or knowledge of a firearm was not a valid defense; furthermore, there was no merit to the defendant's claim that the court should have instructed the jury in accordance with the allegation in the state's information that he intended that a firearm be used, as an information alters neither the statutory elements of the charged offense nor what the court must include in its jury instructions.

b. This court rejected the defendant's request that it overrule binding precedent holding that an accomplice need not have knowledge of or intent regarding an aggravating factor that requires that the principal have only general intent, as this court, being an intermediate appellate body, was bound to follow the precedent from our Supreme Court and other panels of this court.

Argued May 10—officially released September 20, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the first degree as an accessory and conspiracy to commit assault in the first degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Gold, J.*; verdict of guilty of assault in the first degree as an accessory; thereafter, the court denied the defendant's motions for a new trial, to set aside the verdict and for a judgment of acquittal and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Laila M. G. Haswell*, senior assistant public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Anthony Bochicchio*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, C. J. The defendant, Keemo White, appeals from the judgment of conviction, rendered following a jury trial, of being an accessory to assault in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-59 (a) (5). On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction of assault in the first degree as an accessory, and (2) the trial court improperly instructed the jury by omitting an essential element of the offense, namely, the defendant's intent or knowledge that the principal would discharge a firearm during the offense.[1] We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, and procedural history inform our review of the defendant's claims. On the evening of July 24, 2017, Anna Kistoo (Anna), Lisa Sattaur, and Michael Gordon drove to Sigourney Street in Hartford to locate Anna's sister, Melissa Kistoo (Melissa), who was dating the defendant. Anna suspected that Melissa "was getting [beaten] up by [the defendant]" and wanted to check on her. They took two separate cars, with Anna and Sattaur in one car and Gordon in the other. Upon arriving, Gordon parked in front of 196 Sigourney Street. Anna and Sattaur parked on a cross street. Anna and Sattaur then searched the mailboxes of several apartment buildings and eventually found Melissa's name on a mailbox for one of the apartments. Anna and Sattaur approached what they believed to be Melissa's apartment while Gordon, who had joined the two women in the building, remained on the staircase leading up to the floor where the apartment was located.

The defendant arrived shortly thereafter and walked past where Gordon was standing on the staircase, at which point the two nodded at each other. Upon seeing the defendant, Anna approached him and asked where her sister was. About ten to fifteen seconds later, the interaction devolved into a physical altercation. During the "tussle," a gun fell from the defendant's pocket onto the floor. Gordon, who was still standing on the steps, saw the gun on the floor and yelled to Anna and Sattaur "to run to the car [because] there was a gun in the hallway." The defendant then exited the building via the back door and ran to the parking lot across the street, where he conferred with a male acquaintance.

After the altercation, Gordon, Sattaur, and Anna also ran out of the back door of the building and returned to Gordon's car, as it was the closest. Thereafter, the defendant and his acquaintance, who was holding a firearm, ran from the parking lot across the street toward Gordon's car. Gordon observed the defendant and his acquaintance running toward his car and attempted to start the car, but it would not start. While Gordon, Sattaur, and Anna were inside Gordon's car,

the defendant and his acquaintance together attempted to open the driver's side door and pull Gordon from the car. While this was happening, Gordon and Anna observed that the acquaintance had a gun in his hand. Gordon then raised his hands and yelled that he "didn't do nothing" and did not "have anything, don't shoot, don't shoot." The defendant and the acquaintance eventually were able to open Gordon's door, at which point Gordon exited the car and attempted to flee but was shot in the hip by the defendant's acquaintance.[2] Shortly after Gordon was shot, Sattaur was able to start Gordon's car. Sattaur and Anna then drove to where Gordon was lying on the ground, picked him up, and drove him to Saint Francis Hospital and Medical Center in Hartford.

After Gordon was admitted to the hospital, Anna and Sattaur were accompanied by responding officers to the police station to give statements. On July 25, 2017, Gordon, Sattaur, and Anna each separately identified the defendant from a photographic array, but the individual who shot Gordon was never identified or apprehended. The state charged the defendant as an accessory to assault in the first degree in violation of §§ 53a-8 (a) and 53a-59 (a) (5), and with conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (5). The case was tried to a jury over the course of three days, beginning on September 16, 2019.

Following the trial, the jury found the defendant guilty of assault in the first degree by means of a firearm as an accessory and not guilty of the conspiracy charge. The defendant filed a motion for a new trial, a motion to set aside the verdict, and a motion for a judgment of acquittal. The court denied the motions and sentenced the defendant to fifteen years of incarceration, execution suspended after seven and one-half years, followed by three years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the defendant claims that there was insufficient evidence to support his conviction of being an accessory to assault in the first degree. He argues that "[his] actions that day did not show that he intended to physically injure Gordon. Nor did they show that [he] intended the principal use a firearm." We are not persuaded.

The standard of review for a sufficiency of the evidence claim is well settled. "[A] defendant who asserts an insufficiency of the evidence claim bears an arduous burden. . . . [F]or the purposes of sufficiency review . . . we review the sufficiency of the evidence as the case was tried . . . . [A] claim of insufficiency of the evidence must be tested by reviewing no less than, and

no more than, the evidence introduced at trial. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical. . . .

"[O]n appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Raynor*, 175 Conn. App. 409, 424–26, 167 A.3d 1076 (2017), aff'd, 334 Conn. 264, 221 A.3d 401 (2019).

The defendant in the present case was charged with assault in the first degree by means of a firearm as an accessory in violation of §§ 53a-8 and 53a-59 (a) (5). "[F]or the purposes of determining criminal liability, it is of no consequence whether one is labeled an accessory or a principal." *State* v. *Hines*, 89 Conn. App. 440, 447, 873 A.2d 1042, cert. denied, 275 Conn. 904, 882 A.2d 678 (2005). Thus, "to establish a person's culpability as an accessory to a particular offense, the state must prove that the accessory, like the principal, had committed each and every element of the offense." *State* v. *Patterson*, 276 Conn. 452, 483, 886 A.2d 777 (2005).

Section 53a-59 (a) provides in relevant part: "A person

is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm." Thus, "to prove a person guilty as a principal of assault in the first degree [under § 53a-59 (a) (5)], the state must prove beyond a reasonable doubt that (1) the person caused physical injury to another person; (2) that he did so while acting with the intent to cause physical injury to the other person or a third person; and (3) that he caused such physical injury to the other person by means of the discharge of a firearm." *State* v. *Raynor*, supra, 175 Conn. App. 427.

"[A] conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged. . . . Additionally, one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Citation omitted; internal quotation marks omitted.) *State* v. *Heinemann*, 282 Conn. 281, 313, 920 A.2d 278 (2007).

Accordingly, "establishing a defendant's guilt as an accessory to that offense under §§ 53a-59 (a) (5) and 53a-8 requires proof of the following essential elements: (1) that the principal offender violated § 53a-59 (a) (5) by causing physical injury to another person by means of the discharge of a firearm while acting with the intent to cause physical injury; (2) that the defendant solicited, requested, importuned or intentionally aided the principal offender to engage in the conduct by which he violated § 53a-59 (a) (5); and (3) that when the defendant intentionally aided the principal offender to engage in such conduct, the defendant was acting with the intent to cause physical injury to another person." *State* v. *Raynor*, supra, 175 Conn. App. 427–28.

"To act intentionally, the defendant must have had the conscious objective to cause the [desired result] . . . . Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . [T]he defendant's state of mind at the time of the shooting may be proven by his conduct before, during and after the shooting. Such conduct yields facts and inferences that demonstrate a pattern of behavior and attitude toward the victim by the defendant that is probative of the defendant's mental state." (Internal quotation marks omitted.) Id., 431–32; see also *State* v. *Vasquez*, 68 Conn. App. 194, 207, 792 A.2d 856 (2002) ("[i]t is axiomatic that a fact-finder may infer an intent to cause . . . physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident" (internal quotation

marks omitted)). As noted previously, the defendant claims on appeal that the evidence at trial was insufficient to prove beyond a reasonable doubt that (1) he intended to cause physical injury to Gordon or (2) that he intended that the principal would inflict that injury by means of the discharge of a firearm. We conclude that the evidence was sufficient to prove the defendant's intent to cause physical injury and that the state was not required to prove that the defendant intended that the principal inflict the injury by means of the discharge of a firearm.

A

At the outset, we note that the parties agree that Gordon was physically injured by means of the discharge of a firearm by a principal offender other than the defendant. The defendant argues, however, that there was insufficient evidence to sustain his conviction of assault in the first degree as an accessory because his "actions that day did not show that he intended to physically injure Gordon." Specifically, the defendant claims that "the evidence does not show what [his] intention was when he ran to Gordon's car and was trying to open the door. It does not show that he intended to aid the principal in his endeavor, nor does it show that he intended to physically injure someone."[3]

In support of his argument, the defendant further asserts that the "evidence . . . was incredibly sparse" and that, as such, the inference that he intended to harm Gordon was speculative. The defendant points to several alternative inferences that could have been drawn, including that, "from his perspective [Sattaur, Anna, and Gordon] planned on continuing to assault him," and, in that context, he "ran to get a friend." The defendant maintains that there was "no evidence as to what [the defendant and his acquaintance] said to each other" or "evidence that [the defendant] knew the [other man] had a gun." Further, the defendant contends that, because he ran ahead of his acquaintance when running toward Gordon's car, it is "more likely that [the defendant] saw the gun when they got to Gordon's car and tried to open the door. But by then, whatever the principal intended to do was out of [the defendant's] control." The defendant thus argues, based on the evidence adduced at trial, that "it is difficult to envision that [he] had time to form any intent at all," given that the "entire incident occurred in a matter of seconds." We are not persuaded.

There is ample evidence from which the jury reasonably could have found that the defendant intended to cause physical injury to Gordon. The evidence showed that, after disengaging from his altercation with Anna and Sattaur, the defendant ran to a parking lot where he met the principal, who had a gun, and then ran to confront the trio in Gordon's car. The evidence further showed that, although Anna, Sattaur, and Gordon exited

the building the same way the defendant did, they were not pursuing him. To the contrary, they ran away from the defendant to Gordon's car. The defendant and the principal then ran to the car after Gordon, Sattaur, and Anna had entered it. On the basis of this evidence, the jury reasonably could have inferred that the defendant solicited the principal's aid in confronting the trio.

In addition, the jury reasonably could have credited the testimony of Gordon and Anna that the defendant and the principal were both pulling on the door handle of Gordon's driver's side door. Their testimony was corroborated by a video recorded from a surveillance camera at a nearby building. See footnote 2 of this opinion. From this evidence, the jury reasonably could have inferred that the defendant and the principal were attempting to open the car door to engage in a physical altercation with Gordon. Gordon and Anna testified that they saw the principal with a gun in his hand while the two men were trying to open Gordon's car door. Gordon further testified that he then raised his hands and yelled that he "didn't do nothing" and did not "have anything, don't shoot, don't shoot." The evidence also showed that, despite Gordon's pleas, the defendant and the principal continued to pull on the door handle until the door opened, Gordon fled, and the principal shot him.

From this evidence, the jury reasonably could have found beyond a reasonable doubt that the defendant intended to cause physical injury because he enlisted assistance from another to pursue Gordon, Anna, and Sattaur after the initial confrontation ended, forcibly opened Gordon's car door to get to Gordon, knew that the principal had a gun, and continued to force the car door open after Gordon's pleas of "don't shoot, don't shoot." The fact that the jury might have reached one of the conclusions suggested by the defendant does not undermine the reasonableness of the conclusion it did reach. See, e.g., *State* v. *Raynor*, supra, 175 Conn. App. 425 ("the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence" (internal quotation marks omitted)). Thus, because the evidence viewed in the light most favorable to sustaining the verdict was sufficient to prove that the defendant possessed the requisite intent to cause physical injury, his sufficiency of the evidence claim fails.

B

The defendant next claims that, if "an essential element of accessory to assault first with a firearm is that the defendant intend the principal fire the gun or know the principal has a gun," then "the evidence is insufficient to prove that element." For the reasons discussed in part II of this opinion, the state was not required to prove that the defendant intended that the principal use a firearm or that the defendant knew that the principal had a firearm, as neither is an element of the charged

offense. Accordingly, we reject the defendant's sufficiency argument on this point.

## II

We next turn to the defendant's claim that the trial court's jury instructions improperly omitted an essential element of the offense of assault in the first degree with a firearm as an accessory. Specifically, the defendant argues that "[a]n accessory to assault first with a firearm must have the specific intent that the physical injury happen from the discharge of the firearm, or the general intent that the principal discharge a firearm, or the knowledge that the principal is going to use a firearm to inflict the injury." In the alternative, the defendant argues that "the case law that holds that an accomplice does not need to have knowledge or intent of an aggravating factor that requires the principal have only general intent should be overruled." The state responds that the court "properly rejected the defendant's request to add an element to accessorial liability for the crime of assault in the first degree that is not contained in the statutes." We agree with the state.

We begin with our standard of review. "[W]e review jury instructions to determine whether, read in their entirety, they omitted an essential element of the crime charged, thus creating a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 300 Conn. 490, 499, 15 A.3d 1049 (2011). The defendant's claim, which requires us to determine whether a particular mental state is an essential element of being an accessory to assault in the first degree with a firearm, raises a question of statutory interpretation, over which we exercise plenary review. See, e.g., *State* v. *Brown*, 192 Conn. App. 147, 152, 217 A.3d 690 (2019).

The record reveals the following additional relevant facts and procedural history. On September 17, 2019, the court held an on-the-record charge conference with the parties. At the charge conference, defense counsel requested that the court instruct the jury, with regard to the charge of assault in the first degree as an accessory, that the state had to prove beyond a reasonable doubt "that the defendant intended [the] physical injury [be caused] . . . specifically by means of a firearm." In so requesting, the defendant argued that *State* v. *Pond*, 315 Conn. 451, 108 A.3d 1083 (2015), established a similar intent requirement for conspiratorial liability and should be extended to accessorial liability. In *Pond*, our Supreme Court held that, "to be convicted of conspiracy, a defendant must specifically intend that every element of the planned offense be accomplished, even an element that itself carries no specific intent requirement." Id., 453. In the present case, the defendant argued that this extension is logical, as the policy behind the specific intent requirement of conspiracy—that conspirators should not be punished for "conspiring to

commit crimes that they never agreed or intended to commit"—applies with equal force to accessorial liability. The court indicated that it would review *State* v. *Pond*, supra, 451, before ruling on the issue, surmising that the defendant wanted the *Pond* conspiracy standard to be applied to the accessory charge.[4]

Although the defendant conceded that our Supreme Court in *Pond* specifically addressed the issue of accessorial liability and distinguished it from conspiratorial liability, he asked the trial court "to reconsider [*Pond*'s] holding" and use the same intent language for both the conspiracy and accessory instructions. The state argued that *Pond* "directly address[ed] this issue of the difference between conspiracy and accessory," and requested that the court "apply *Pond* as it is and not expand what it currently requires the court to do."

The trial court agreed with the state and denied the defendant's request to charge based on the court's reading of *State* v. *Pond*, supra, 315 Conn. 451, *State* v. *Gonzalez*, supra, 300 Conn. 490,[5] and *State* v. *Artis*, 136 Conn. App. 568, 47 A.3d 419 (2012), rev'd on other grounds, 314 Conn. 131, 101 A.3d 915 (2014). In so ruling, the court observed that *Pond* distinguished accessorial liability from conspiratorial liability and that *Gonzalez* and *Artis* held that an accomplice may be held criminally liable for the principal's use of a weapon, even when the accessory did not intend or even know that a weapon would be used to commit the crime. See *State* v. *Pond*, supra, 469–70; *State* v. *Gonzalez*, supra, 503–505; *State* v. *Artis*, supra, 584. Further, the court noted that giving the requested instruction would involve changing "the first element of assault in the first degree to a different mental state than the statute provides."

Discussing this court's decision in *Artis*, the trial court noted: "Importantly, *Artis*, which, like *Pond*, also cites [*Gonzalez* and] deals with precisely the charge that we have here: assault in the first degree [as an accessory], albeit under subsection (a) (1) rather than the subsection (a) (5) case that we have.

"*Artis* holds that, in an assault one case, where the defendant is charged under a theory of accessorial liability, the state is not required to prove that the defendant intended to cause serious physical injury, specifically, by means of a dangerous instrument, or even to prove that the defendant was even aware that another participant in the crime possessed a dangerous instrument.

"As *Artis* points out, in the crime of assault in the first degree, the use of a dangerous instrument and, by analogy, [the] use of a firearm in our case, simply represents the means by which the defendant is alleged to have participated in causing the serious physical injury. But, to be culpable, the defendant only needs

to have the intent to cause serious physical injury, not the intent to do so with a dangerous instrument.

"So, in light of those cases, I will not be instructing that, [for] the defendant to be convicted [as] an accessory, he must have intended to cause physical injury, specifically, by use of a firearm."

A

Because the defendant's claim centers on the elements of the crime of which he was convicted, we begin with the language of the relevant statutes. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Winakor* v. *Savalle*, 343 Conn. 773, 781, 276 A.3d 407 (2022).

The statutory provision governing accessorial liability is § 53a-8 (a), which provides that "[a] person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

It is well established that there is no legal distinction between principal and accessorial liability. See, e.g., *State* v. *Flemke*, 315 Conn. 500, 508, 108 A.3d 1073 (2015). "Instead, [t]he modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . The legislature adopted this view and expressed it in . . . § 53a-8 (a). Accordingly, accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . ." (Internal quotation marks omitted.) Id.

Because an accessory is legally accountable for the conduct of another who commits a crime, for purposes of imposing criminal liability, the state need not establish that the defendant "[knew] of or endorse[d] every act of his coparticipant in the crime." *State* v. *McCal-*

*pine*, 190 Conn. 822, 832, 463 A.2d 545 (1983); id., 832–33 ("[c]ontrary to the defendant's allegations, [our case law] impose[s] no requirement that the accessory possess the intent to commit the specific degree of the robbery charged or the intent to possess a deadly weapon"); see also *State* v. *Avila*, 223 Conn. 595, 609, 613 A.2d 731 (1992) (affirming *State* v. *McCalpine*, supra, 832–33).

Rather, "a conviction under § 53a-8 requires [the state to prove the defendant's] dual intent . . . [first] that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged. . . . Additionally, one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 300 Conn. 499–500. That being said, "Connecticut case law remains consistent . . . in permitting the imposition of accessorial liability pursuant to § 53a-8, without requiring that the defendant intend to satisfy a criminal statute's aggravating circumstances in cases [in which] that aggravating circumstance does not [require] a specific mental state and requires only that the *principal* act with the general intent to perform the proscribed act." (Emphasis added.) Id., 506.

We find particularly instructive our Supreme Court's decision in *Gonzalez*. In that case, the defendant similarly claimed that the trial court's jury instructions improperly omitted an essential element of the offense of manslaughter in the first degree with a firearm as an accessory. "Specifically, the defendant claim[ed] that accessorial liability under § 53a-8 encompasses both the specific intent to cause a result, in this case, to cause the victim serious physical injury, as well as the general intent to perform the physical acts that constitute the offense of manslaughter in the first degree with a firearm, including the use, carrying or threatened use of a firearm." (Internal quotation marks omitted.) Id., 495. The court rejected this claim.

After reiterating the dual intent standard of § 53a-8, the court reviewed the elements of the underlying substantive crime, manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[6] "Lacking a specifically enumerated mental state, the statutory language of § 53a-55a clearly indicates . . . that the firearm element is one of general intent, requiring only that the perpetrator act volitionally in some way to use, possess or threaten to use a firearm in the commission of the offense." Id., 502. The court then discussed the additional elements of accessorial liability under § 53a-8 for violations of § 53a-59a and the seminal case in this area, *State* v. *McCalpine*, supra, 190 Conn. 831.

Finding that "*McCalpine* remains good law with respect to the proposition that the accessory statute's

requirement that the defendant act with the mental state required for commission of an offense drops out of the calculation when the aggravating circumstance does not require proof of any particular mental state"; (internal quotation marks omitted) *State* v. *Gonzalez*, supra, 300 Conn. 505; the court held that, "[w]hen a defendant is charged with a violation of § 53a-55a as an accessory, the state need not prove that the defendant intended the use, carrying or threatened use of the firearm. . . . Proof of the intent element is satisfied if the principal in fact used the firearm." (Citation omitted; internal quotation marks omitted.) Id., 510.

Relying on the reasoning in *Gonzalez*, this court in *Artis* held that, in the case of accessory to assault in the first degree by means of a dangerous instrument in violation of §§ 53a-8 and 53a-59 (a) (1), "the state was not required to prove that the defendant intended to cause serious physical injury *by means of a dangerous instrument*, or to prove that the defendant was even aware that another participant had a dangerous instrument or knife. . . . The use of a dangerous instrument simply represents the means by which the defendant is alleged to have participated in causing the serious physical injury, but to be culpable, the defendant only needs to have the intent to cause serious physical injury to another person, not the intent to do so with a dangerous instrument." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Artis*, supra, 136 Conn. App. 584–85; see also *State* v. *Miller*, 95 Conn. App. 362, 371–77, 896 A.2d 844 (holding that crime of first degree manslaughter with firearm did not require proof that defendant, as accomplice, intended to use firearm), cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006); *State* v. *Tucker*, 9 Conn. App. 161, 167–68, 517 A.2d 640 (1986) (holding that crime of accessory to assault in second degree does not require intent that injury be caused by means of dangerous instrument or deadly weapon but, rather, requires only intent to cause physical injury to another person).

We conclude that *Gonzalez* and *Artis* are directly applicable to the defendant's claim in this case. The requirement in § 53a-59 (a) (5) that the physical injury be inflicted "by means of the discharge of a firearm" is similar to the requirement in § 53a-55a (a) that a person is guilty of manslaughter in the first degree with a firearm if he "uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a . . . firearm" when committing the crime of manslaughter. If the state was not required to prove in *Gonzalez* that the defendant, as an accessory, intended or knew that the principal would use a firearm when committing manslaughter, the state in the present case was not required to prove that the defendant intended or knew that the principal would assault Gordon by means of discharging a firearm. Similarly, the "by means of a dangerous instrument" lan-

guage at issue in *Artis* is virtually identical in structure and application to the "by means of the discharge of a firearm" language at issue in the present case. "The statutory language as to the aggravating circumstances in [§§ 53a-55a and 53a-59 (a) (1)] lacks the requirement of specific intent." *State* v. *Artis*, supra, 136 Conn. App. 584. Consequently, we see no basis for reaching a different result in this case.

Nevertheless, the defendant attempts to distinguish this case law in a variety of ways. We address his specific arguments in turn.

The defendant first argues that the "by means of the discharge of a firearm" language of § 53a-59 (a) (5) is not merely an aggravating factor but is an essential element of the crime that required the state to prove that he specifically intended the principal to discharge the firearm during the assault. According to the defendant: "For a principal to be charged with [a violation of] § 53a-59 (a) (5), he must inflict the injury in a very specific way—through the discharge of a firearm. No other method will satisfy the elements of the statute. The level of specificity the statute requires implies that the principal must have some premeditation or at least a plan to shoot the gun, even if it is formed moments before the shot is fired. This is very different from other aggravating factors involving weapons where the use of the weapon can encompass a wide range of actions, from simply carrying the weapon to using it to inflict the injury in whatever way seems efficacious at the moment."

The defendant's assertion, however, finds no support in the relevant statutory language. Section 53a-59 (a) (5) does not require "premeditation" or "a plan to shoot the gun" in order to violate the statute. A plain reading of the statute makes clear that there is no particular mental state attached to the element requiring that a defendant cause injury "by means of the discharge of a firearm." See, e.g., *State* v. *Rosado*, 107 Conn. App. 517, 537, 945 A.2d 1028 (holding that intent to use firearm was not element of § 53a-59 (a) (5) but that offender must intend only to cause physical injury), cert. denied, 287 Conn. 919, 951 A.2d 571 (2008); *State* v. *Washington*, 15 Conn. App. 704, 710–11, 546 A.2d 911 (1988) (holding that state need not establish intent that injury be caused by means of deadly weapon or dangerous instrument to convict defendant of assault in first degree).

The only mental state required under § 53a-59 (a) (5) is the specific intent "to cause physical injury." See, e.g., *State* v. *Rosado*, supra, 107 Conn. App. 537. Had the legislature intended there to be a mental state requirement as to the means of inflicting the injury, it could have easily set forth such a requirement in the statute by stating that the discharge had to be intentional or knowing. Because the legislature declined to impose such a requirement, there is no basis for us to

do so. See, e.g., *State* v. *T.R.D.*, 286 Conn. 191, 218, 942 A.2d 1000 (2008) ("absence of any [mental state] requirement demonstrates that the legislature did not intend to make it an element of the crime" (internal quotation marks omitted)).

Accordingly, the defendant's interpretation of subsection (a) (5) of § 53a-59 as requiring the principal to "have some premeditation or at least a plan to shoot the gun" finds no support in either the statutory language or the case law interpreting that language.

The defendant's assertion that, because "the charge [of assault in the first degree with a firearm] must be accomplished only by the discharge of a firearm . . . it follows that the accomplice must specifically intend that the principal fire a gun to [cause] the injury" is also unpersuasive. That the offense at issue here can only be committed via the discharge of a firearm does not itself require that any particular mental state accompany the discharge. It is merely the means by which the injury must occur. See, e.g., *State* v. *Artis*, supra, 136 Conn. App. 584. As previously stated, § 53a-59 (a) (5) requires no mental state with regard to the discharge of a firearm. Because the statute does not require a specific mental state with regard to the firearm element of the offense, to be culpable, the defendant need have only the intent to cause physical injury to another person, not the intent to do so with a firearm. See id., 584–85; see also *State* v. *Rosado*, supra, 107 Conn. App. 537.

The defendant argues, alternatively, that an accomplice must have, if not the specific intent that the principal use a firearm, at least the general intent that the principal act volitionally in some way in discharging the firearm. Specifically, the defendant argues that the language, "causes such injury to such person or to a third person by means of the discharge of a firearm" within § 53a-59 (a) (5) is, at least, a general intent element. Therefore, according to the defendant, it follows that, because an accessory must act "with the mental state required for commission of [the] offense," the accessory should likewise have the general intent that the principal cause injury "by means of the discharge of a firearm." (Emphasis omitted.)

In support of his argument, the defendant relies on the concurring opinion of Justice Shea in *State* v. *McCalpine*, supra, 190 Conn. 833. In *McCalpine*, the defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), which requires that the defendant commit the robbery while "armed with a deadly weapon . . . ." On appeal, the defendant in *McCalpine* argued that the intent element of § 53a-8 required that the accessory possess the intent to aid in the commission of the robbery as well as the intent that the principal do so while armed with a deadly weapon. Id., 831. The majority in *McCalpine* disagreed,

stating that, "[t]o establish the guilt of an accused as an accessory . . . the state must prove criminality of intent and community of unlawful purpose. . . . The mental state of an [accessory] incorporated in § 53a-8 does not require that the accused know of or endorse every act of his coparticipant in crime." (Citation omitted.) Id., 832.

"In his concurrence, Justice Shea departed from that conclusion. Reasoning that 'the mental state required of an accomplice who is charged with a crime [cannot be] less than that which must be proved against a principal' . . . Justice Shea stated that '[t]his requirement must extend to those acts which enhance the degree of the crime as well as to those which constitute the basic crime itself. Otherwise an accomplice might be convicted of an offense although he did not entertain the same mental state required by statute for conviction of the principal.' " (Citation omitted.) *State* v. *Miller*, supra, 95 Conn. App. 373 (summarizing concurring opinion in *State* v. *McCalpine*, supra, 190 Conn. 833–34).

Although subsequent decisions have limited *McCalpine* to cases in which the charged offense required proof of a particular mental state; see, e.g., *State* v. *Crosswell*, 223 Conn. 243, 258 and n. 11, 612 A.2d 1174 (1992); "*McCalpine* remains good law with respect to the proposition that the accessory statute's requirement that the defendant act with the mental state required for the commission of an offense drops out of the calculation when the aggravating circumstance does not require proof of any particular mental state." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 300 Conn. 505.

As § 53a-59 (a) (5) does not require proof of any particular mental state on the part of the principal with regard to "the discharge of a firearm," the statute also does not require that the accomplice act with any particular mental state in order to be guilty of committing the offense. Thus, the state need not establish that a defendant generally intended that the principal use the firearm in some way during the assault to establish a violation of § 53a-59 (a) (5). See, e.g., *State* v. *Rosado*, supra, 107 Conn. App. 537 (intent to use firearm is not required under § 53a-59 (a) (5), which requires only "intent to cause physical injury . . . by means of the discharge of a firearm" (internal quotation marks omitted)). Put simply, the statute includes neither a specific nor a general intent requirement as to the discharge of a firearm.

The defendant next argues that, "[i]f this court does not believe the statute demands that the accomplice must specifically or generally intend that the principal fire a gun, the court should nonetheless hold that the accomplice should have knowledge of the gun." In support of this argument, the defendant urges this court to adopt the reasoning of *Rosemond* v. *United States*,

572 U.S. 65, 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014). The state argues that the analysis in *Rosemond* is inapplicable because it involved an interpretation of "different statutory language in a different statute by a different legislative body." We agree with the state and conclude that *Rosemond* does not control the issue presented here.

In *Rosemond*, the United States Supreme Court interpreted the federal aiding and abetting statute, 18 U.S.C. § 2 (a), as it applied to a violation of 18 U.S.C. § 924 (c), which prohibits the use or carrying of a firearm "during and in relation to any crime of violence or drug trafficking crime." (Internal quotation marks omitted.) *Rosemond* v. *United States*, supra, 572 U.S. 67. "As at common law, a person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Id., 71. The court in *Rosemond* observed that, in the case of 18 U.S.C. § 924, the "intent must go to the specific and entire crime charged"; id., 76; specifically, in the case of *Rosemond*, to the "predicate crime plus gun use . . . ." Id. The Supreme Court then explained that it "previously found that intent requirement satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." Id., 77. Therefore, an accomplice must "[know] that one of his confederates will carry a gun." Id.

The problem with the defendant's argument is that our Supreme Court never has interpreted § 53a-8 in the manner that the court in *Rosemond* interpreted 18 U.S.C. § 2. To the contrary, our Supreme Court consistently has held that the accessory is punished for the ultimate harm caused by the principal because the accessory helped the principal to bring about the actual harm even if he was unaware of how the principal was going to cause the harm. For example, in *State* v. *Pond*, supra, 315 Conn. 480, the court held: "[I]f one participant decides to brandish a gun in what had been planned as an unarmed robbery, his accomplices may be convicted of robbery in the first degree for their role in the crime, regardless of their knowledge or intention with regard to the weapon." See also *State* v. *Artis*, supra, 136 Conn. App. 583 (holding that §§ 53a-8 and 53a-59 (a) (1) "[do] not require that [the defendant] knew of the presence of a knife, if indeed, that is the instrument that caused [the victim's] injuries"). Ultimately, in the absence of a potential conflict with the United States constitution or other federal law, our Supreme Court, and not the United States Supreme Court, is the ultimate authority on the interpretation and construction of Connecticut's statutes. See, e.g., *State* v. *Jenkins*, 298 Conn. 209, 263, 3 A.3d 806 (2010); see also *Johnson* v. *Manson*, 196 Conn. 309, 319, 493 A.2d 846 (1985) ("Connecticut is the final arbiter of its own laws"), cert. denied, 474

U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986).

As other state appellate courts have noted, *Rosemond* "plows no new constitutional ground and applies only to 18 U.S.C. § 924 (c) and the federal aiding-and-abetting statute [and] has no impact on state law." *Whitaker* v. *State*, 199 A.3d 1021, 1029 (R.I. 2019); see also *State* v. *Ward*, 473 S.W.3d 686, 693 (Mo. App. 2015) ("Nothing in *Rosemond* . . . suggests that its holding rests on any constitutional requirement or has any application to state criminal laws on accomplice liability; rather, the [c]ourt's analysis was merely a question of federal interpretation of the federal aiding and abetting statute. As such, it does not control here even where the federal statute and state aiding and abetting statutes are similar.").

The defendant's assertion, relying on the reasoning in *Rosemond*, that "it is incredibly unfair to dilute the elements of the crime when someone is charged as an accessory" misses the point. The elements of the offense of which the defendant was convicted are determined by the legislature, not the courts. The language adopted by our legislature establishes that an accessory, who intentionally aids the principal, merely is being held "liable for his role in an actual crime, whatever that role might be . . . ." *State* v. *Pond*, supra, 315 Conn. 487. Here, the assault would not have occurred were it not for the defendant's actions. The defendant recruited the principal's presence to confront Gordon and aided the principal in ushering Gordon out of the car. The jury reasonably concluded that the defendant possessed the same specific intent required for the offense of assault in the first degree—the intent to inflict physical injury—and intentionally aided the principal who engaged in the conduct that aggravated the crime, i.e., caused physical injury by means of the discharge of a firearm. Whether the defendant knew that his cohort had a firearm is immaterial under the relevant statutes.

The defendant further argues that, because he may not rely on an affirmative defense under General Statutes § 53a-16b, the court "must find that the accomplice intend[ed] the shooting or [knew] of the gun . . . ." Conversely, the state argues "that the legislature has not authorized a defendant to reduce his culpability where he acts as an accessory to a first degree assault does not mean that a court is authorized to alter the elements of the crime enacted by the legislature." We agree with the state.

Section 53a-16b authorizes a defendant who was "not the only participant" in specific offenses[7] to raise an affirmative defense that he "(1) [w]as not armed with a . . . firearm, and (2) had no reasonable ground to believe that any other participant was armed with such a weapon." Section 53a-59 (a) (5) is not one of the enumerated crimes to which this affirmative defense

applies. The defendant asserts that "one of the reasons the court [in *Gonzalez*] determined that the state did not need to prove [that] the accomplice intended the use of a firearm for manslaughter first with a firearm [in violation of § 53a-55a] was because the accomplice was able to avail himself of [the] affirmative defense [in § 53a-16b]." The defendant argues, therefore, that, because, unlike in *Gonzalez*, § 53a-16b is not available to him, § 53a-59 (a) (5) must include an intent or knowledge element with regard to the use of a firearm. We are not persuaded.

That the legislature permitted § 53a-16b to be raised as an affirmative defense to violations of § 53a-55a has no bearing on this case. Had the legislature intended the result the defendant suggests it had two direct avenues available to it. First, as previously noted in this opinion, it expressly could have included an intent or knowledge requirement in § 53a-59 (a) (5). It did not. It is axiomatic that this court may not change the elements of a statute to alter its plain meaning. See, e.g., *Mayer* v. *Historic District Commission*, 325 Conn. 765, 776, 160 A.3d 333 (2017) ("it is well settled that [w]e are not permitted to supply statutory language that the legislature may have chosen to omit" (internal quotation marks omitted)). As the state correctly notes in its brief, "legislatures and not courts are responsible for defining criminal activity." *State* v. *Skakel*, 276 Conn. 633, 675, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). Second, the legislature could have included § 53a-59 (a) (5) in the list of offenses to which § 53a-16b applies. Again, it did not. See footnote 7 of this opinion. In fact, that § 53a-16b does not include assault in the first degree with a firearm indicates that the legislature did not want lack of intent or knowledge of a firearm to be a valid defense to an accessory's liability for the crime. See, e.g., *Mayer* v. *Historic District Commission*, supra, 775 ("we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded" (internal quotation marks omitted)).

Finally, the defendant argues that, "because the information charged [him] with intending that a firearm be used," the jury instruction should have included that element. Specifically, the defendant argues that, because the information alleged that he "did solicit, request, command, importune or intentionally aid another person to intentionally cause physical injury, by means of a firearm," the state was required to prove that he intended that his cohort discharge the gun.[8] The defendant's argument is without merit.

What is set forth in an information alters neither the statutory elements of the charged offense that the state is required to prove beyond a reasonable doubt at trial, nor what the court must include in the jury instructions. "[B]oth this court and our Supreme Court have made

clear that [t]he inclusion in the state's pleading of additional details concerning the offense does not make such allegations essential elements of the crime, upon which the jury must be instructed. . . . Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, *the inclusion of additional details in the charge does not place on the state the obligation to prove more than the essential elements of the crime*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vere C.*, 152 Conn. App. 486, 527, 98 A.3d 884, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014).

Here, the information put the defendant on notice that he was being charged as an accessory to first degree assault under §§ 53a-8 and 53a-59 (a) (5). Thus, the defendant had sufficient notice of the crime against which he was required to defend. "As long as an information provides the statutory name of the offense . . . identifie[s] the place of the offense, the names of the victims, and the general nature of the acts . . . the allegations . . . [are] sufficient." (Internal quotation marks omitted.) *State* v. *Solek*, 242 Conn. 409, 424, 699 A.2d 931 (1997).

Given that neither intent that a principal discharge a firearm nor knowledge that the principal intends to do so is an element of accessorial liability for the crime of assault in the first degree in violation of § 53a-59 (a) (5), the state was not required to prove those elements. We conclude, therefore, that the court properly declined to instruct the jury that, to find the defendant guilty of assault in the first degree with a firearm as an accessory in violation of §§ 53a-8 and 53a-59 (a) (5), the defendant was required to intend or to know that the principal would discharge a firearm during the incident to inflict the injury.

B

Finally, the defendant argues, in the alternative, that "*McCalpine, Miller, Gonzalez* and all the case law that holds that an accomplice does not need to have knowledge or intent of an aggravating factor that requires the principal have only general intent should be overruled." This, however, we cannot do.

"[A]s an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court." (Internal quotation marks omitted.) *State* v. *Salazar*, 151 Conn. App. 463, 476, 93 A.3d 1192 (2014), cert. denied, 323 Conn. 914, 149 A.3d 496 (2016). Nor can one panel of this court overrule another panel of this court. E.g., *Connelly* v. *Commissioner of Correction*, 149 Conn.

App. 808, 815, 89 A.3d 468 (2014) ("it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding"). Because this court is bound to follow the precedent from both our Supreme Court and other panels of this court, the defendant's claim that this court should overrule binding precedent must be rejected.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant addresses his instructional claim first in his appellate briefs, we begin with his sufficiency of the evidence claim because, if he prevails on this claim, he is entitled to a judgment of acquittal rather than to a new trial. See, e.g., *State* v. *Moore*, 100 Conn. App. 122, 126 n.2, 917 A.2d 564 (2007).

[2] At trial, the state introduced into evidence two surveillance videos from an apartment building at 195 Sigourney Street, which captured the events of the evening. The video shows the defendant running into a gated parking lot at 195 Sigourney Street before running back across the street toward Gordon's vehicle with his acquaintance close behind him. The video also shows the defendant and his acquaintance attempting to open Gordon's car door. When the door opens, Gordon exits and begins to run down the street prior to being shot.

[3] The defendant's appellate briefs make only passing reference to whether the evidence before the jury proved that the defendant intended to aid the principal in the assault. The defendant simply attempts to analogize the facts of the present case to those of *State* v. *Bennett*, 307 Conn. 758, 768, 59 A.3d 221 (2013), in which "the evidence reveal[ed] little about" the defendant's actions prior to arriving at the scene of the murder and during the brief period between his arrival and the shooting at issue. In that case, our Supreme Court found the evidence insufficient for the trial court to find the defendant guilty beyond a reasonable doubt of being an accessory to murder. See id., 774. In the present case, the defendant asserts that, as "in *Bennett*, there is no proof of what [he] initially said to the principal. In fact, this incident was not planned nearly as carefully as *Bennett*. . . . Also, although [the defendant] and the principal acted together to open the car doors, he did not do anything to aid, encourage or facilitate the shooting."

In making this argument, the defendant overlooks that, in *Bennett*, the court noted that an accessory may be found to have intended to aid the principal where he "actively participated in [the crime] through acts beneficial to the principal such as identifying the victim, taking the principal to the victim, distracting the victim, acting as a lookout to prevent interruption to the murder or facilitating the principal's escape." *State* v. *Bennett*, supra, 307 Conn. 769. Given that the evidence admitted in the present case showed that the principal ran to Gordon's car only after talking with the defendant and that the defendant worked in tandem with the principal to open Gordon's car door, which immediately preceded the assault on Gordon, the jury reasonably could have concluded that the defendant intended to aid the principal in the assault.

[4] In *State* v. *Pond*, supra, 315 Conn. 454, the defendant was convicted of conspiracy to commit robbery in the second degree in violation of General Statutes (Rev. to 2007) §§ 53a-48 (a) and 53a-135 (a) (2). In that case, the defendant claimed that the trial court had improperly failed to instruct the jury that, to find him guilty of the conspiracy charge, he must have specifically intended that his coconspirator would display or threaten the use of what the coconspirator would represent to be a deadly weapon or dangerous instrument. Id., 454–55. In so arguing, the defendant pointed to the language of § 53a-48 (a), which requires the state to prove that the defendant acted "with intent that conduct constituting a crime be performed," and argued that the statute should be read as requiring that an "accused specifically intend that each part of each element of . . . the crime that forms the object of the conspiracy, be performed." *State* v. *Pond*, supra, 468. The defendant further argued that "any ambiguities in the text of § 53a-48 (a) may be resolved by comparing the statutory language with that of . . . § 53a-8 (a), which governs accomplice liability, and § 53a-49 (a), which governs criminal attempt." Id., 469. Our Supreme Court agreed, stating: "[I]f the legislature had intended to impose the same kind of strict liability for conspiracy as it did for accomplice liability and criminal attempt, it would

have used the same statutory language to characterize the respective mens rea requirements. It did not. . . .

"[T]he legislature, in defining the requisite intent for conspiracy in § 53a-48 (a), declined to use the language from §§ 53a-8 (a) and 53a-49 (a) providing that the intent necessary to violate those statutes is identical to the mental state required for commission of the underlying offense. We presume that this choice of statutory language was purposeful and, therefore, that the legislature did not intend that the mens rea requirement for conspiracy would mirror that of the object offense. Accordingly, we agree with the defendant that the decidedly most reasonable interpretation of § 53a-48 (a) is that, to conspire to commit robbery in the second degree in violation of §§ 53a-135 (a) (2) and 53a-48, a defendant must specifically intend that the planned robbery will involve the display or threatened use of a purported weapon." (Citations omitted; internal quotation marks omitted.) Id., 469–71.

[5] The issue in *Gonzalez* concerned a jury instruction regarding an element of the offense of manslaughter in the first degree with a firearm, specifically, "the defendant's intention that the principal would use, carry or threaten the use of a firearm during the commission of the offense." *State* v. *Gonzalez*, supra, 300 Conn. 492. As we will discuss subsequently in this opinion, our Supreme Court held that no such intent requirement existed and that "Connecticut case law [permits] the imposition of accessorial liability pursuant to § 53a-8, without requiring that the defendant intend to satisfy a criminal statute's aggravating circumstance in cases [in which] that aggravating circumstance does not [require] a specific mental state . . . ." Id., 506.

[6] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

[7] These offenses include General Statutes §§ 53a-55a, 53a-56a, 53a-60a, 53a-92a, 53a-94a, 53a-102a and 53a-103a.

[8] The state argues that the defendant improperly omitted a comma in the information, thus modifying the first clause. The defendant, however, correctly transcribed what was set forth in the information—the first sentence containing "by means of a firearm" had a comma within the information, and the second sentence did not. Regardless, the defendant's argument is incorrect.